IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

RAMSEY G. ANDERSON,

                           Plaintiff,                    OPINION AND ORDER

     v.

                                                     08-cv-499-bbc

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                         Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

This is an action for judicial review of an adverse decision of the Commissioner of Social Security brought pursuant to 42 U.S.C. § 405(g). Plaintiff Ramsey G. Anderson seeks reversal of the commissioner's determination that because he was not disabled, he was ineligible for Disability Insurance Benefits under Title II of the Social Security Act, codified at 42 U.S.C. §§ 416(i) and 423(d). He argues that the administrative law judge gave too much weight to the opinion of a medical expert who testified that plaintiff could perform medium work and not enough weight to the opinions of two examining physicians who concluded that plaintiff was more significantly limited. In addition, he contends that the administrative law judge made a faulty credibility determination and erred in his conclusion that plaintiff can return to his past relevant work.

1

I reject plaintiff's arguments and affirm the commissioner's decision.  Although plaintiff's arguments regarding the medical opinions might be persuasive if I were the trier of fact, they fail to show the significant flaws in reasoning or lack of evidence required for reversal of an administrative law judge's determination of the weight to be given to competing medical opinions.  Plaintiff's remaining challenges are even less persuasive.  The administrative law judge's credibility determination was thorough and well-supported and substantial evidence supports his finding that plaintiff can perform at least two of his past jobs as they are performed in the national economy.

The following facts are drawn from the administrative record (AR):

FACTS

A. <u>Background and Procedural History</u>

Plaintiff was born on September 13, 1953.  AR 63.  He completed high school and some welding training.  AR 79.  Plaintiff has past relevant work experience as a welder, horn assembler, security services worker, highway maintenance worker and maintenance worker.

Plaintiff applied for disability insurance benefits on November 17, 2004, alleging that he has been disabled since March 15, 1999 because of C4-5 disc herniation with foraminal enroachment and C5 nerve root irritation.  AR 63-65, 74.  The last date on which plaintiff

had disability insurance benefits coverage was March 31, 2005, meaning that he had to establish that he was disabled on or before that date. AR 15.

## B. Medical Evidence

### 1. Treatment prior to last insured date, March 31, 2005

#### a. Dr. Daniel P. Lochman

On March 16, 1999, plaintiff sustained a neck injury at work. He was treated by Dr. Daniel P. Lochman, who noted extreme muscle spasm in plaintiff's posterior cervical spine and trapezius. AR 192. On April 31, 1999, Lochman saw plaintiff and noted that he had received some symptomatic relief from anti-inflammatories, muscle relaxants and chiropractic care. Lochman ordered a magnetic resonance imaging scan. AR 191. The scan showed a moderate disc protrusion at C4-5 that effaced the cord and narrowed the left foramen and some left neural foramen narrowing at T2-T3 with joint spurring. AR 193.

#### b. Dr. Thomas Rieser

On May 13, 1999, plaintiff saw Dr. Thomas Rieser, reporting constant sharp shooting neck pain when he turned his head to the left, headaches two to three times a week, and intermittent pain in his left shoulder. He also reported sharp pain in his left arm to the elbow with numbness and tingling in his hand. An x-ray of the cervical spine showed a

3

herniated disc.  AR 180-81.  In June 1999, Rieser prescribed physical therapy, a neck collar, Soma and Indocin.  AR 178.  From June through August 1999, plaintiff had physical therapy, obtaining some improvement in cervical range of motion and strength but continuing to have pain and limitation.  AR 153-79.  On July 15, 1999, plaintiff told the physical therapist that he had aggravated his thoracic spine while trying to lift a bale of hay. AR 164.

On September 16, 1999, plaintiff returned to see Rieser, reporting that he was "overall better."  He had fewer headaches, more range of motion in his neck and less arm pain. He took Tylenol on occasion.  On range of motion testing, plaintiff had no limitations on extension, flexion or right rotation, but was limited to 80% in left rotation.   Plaintiff indicated that he would like to return to his work as a heavy equipment welder.  Rieser indicated that plaintiff could try to return to work lifting 30 pounds for two weeks, 50 pounds for two weeks and then 75 pounds thereafter.  AR 174.

On October 28, 1999, plaintiff returned to Rieser and reported that he had not returned to work.  Plaintiff said he still had limitations and pain, especially with overhead activities and doing work that required reaching out in front of him.  Plaintiff felt limited enough that he wanted to consider having surgery.  On examination, Rieser noted that plaintiff's range of motion was limited on rotation but flexion and extension were normal. Rieser indicated that although plaintiff was neurologically intact, he was probably getting

4

"persistent mechanical irritation to the neural elements when he hyperextends."  AR 173. Rieser talked to plaintiff about the possibility of undergoing a C4-5 anterior cervical discectomy and fusion.  AR 173.

On December 23, 1999, Rieser indicated that plaintiff had reached a plateau in his recovery.  Plaintiff had general stiffness and some limitation on range of motion in his neck. Rieser placed plaintiff at 10% disability for worker's compensation because of persistent pain at the C4-5 level associated with the herniated disc.  AR 171.


c.  <u>Dr. Ilan Shapiro</u>

On August 25, 1999, Dr. Ilan Shapiro, an orthopedic surgeon, performed an independent medical evaluation of plaintiff.  Plaintiff reported that his neck and shoulder pain was diminishing gradually but that he was still quite uncomfortable.  Shapiro indicated that if plaintiff continued to improve, he could return to work on September 15, 1999 in a sedentary position with no lifting or welding.  AR 239.  If plaintiff continued to improve, Shapiro said, then he likely could resume full work activities on September 30.  If he was not doing well by then, it would be appropriate to consider surgical intervention for the disk herniation.

Shapiro saw plaintiff again on November 17, 1999.  Plaintiff reported that he had not returned to work because his employer did not have any light duty available for him. He

5

said he had agreed to undergo the discectomy and fusion recommended by Rieser in two weeks.  AR. 227.  Plaintiff continued to have pain in his neck predominantly on the left that radiated into his shoulder.  Shapiro observed that plaintiff's neck was stiff, with limited range of motion.  However, plaintiff had good strength, sensation and reflexes in the upper extremities.  Shapiro concluded that the surgery was a reasonable option, given that plaintiff still had significant discomfort and motion limitation after having undergone seven months of conservative treatment.  AR 229.  In Shapiro's opinion, plaintiff was capable of working with restrictions consisting of no lifting greater than 35 pounds and no repetitive neck and upper extremity motion or overhead activities.  AR 230.

On February 10, 2000, plaintiff returned to Shapiro and reported that he had not made up his mind about having the surgery.  Plaintiff reported some intermittent numbness involving his left fingers.  On examination, Shapiro found that plaintiff's left shoulder was quite atrophic in appearance compared to the right shoulder.  He noted that there was a definite crevice in plaintiff's left shoulder.  Shapiro found that plaintiff had diminished left bicipital reflex and diminished shoulder abduction strength, which were new findings that suggested nerve compression.  AR 222.  He continued to recommend surgery and found plaintiff capable of working in a sedentary job involving no repetitive lifting, no extensive left upper extremity usage and no repetitive head movements.  Shapiro assigned plaintiff a 5% permanent disability if he had the surgery and 7.5% disability if he did not have the surgery.

6

Shapiro considered the endpoint of plaintiff's healing with conservative treatment to be September 30, 1999.  AR 223.

Plaintiff did not have the surgery.  Apart from chiropractic treatment, plaintiff sought no medical treatment for his neck condition for more than five years, until June 2005.

2.  Treatment after last insured date

On June 9, 2005, plaintiff saw Lochman about stiffness in his hands and his right hip. Lochman wrote that plaintiff gets pain in his right hip if he sits for too long or is on his tractor.  Lochman diagnosed osteoarthritis and prescribed Celebrex.  AR 186.  A March 12, 2006 x-ray of plaintiff's right hand indicated a possible fifth metacarpal fracture and mild degenerative changes.  AR 212.

On April 24, 2006, plaintiff returned to Lochman and reported he had been doing well with his Celebrex and physical therapy.  He wanted a refill of Celebrex and help in filling out paper work for driving a school bus.  AR 211.  From April to June 2006, plaintiff attended physical therapy sessions.  He was discharged on June 6, 2006 after meeting his goals for his right hip and lower extremity problems.  At that time, plaintiff was driving without significant problems with hip or low back pain.  AR 204-207.

On August 10, 2006, plaintiff returned to see Lochman for pain and stiffness in his neck and shoulder.  Lochman noted, "Patient states he was haying and riding in his tractor

7

with his arm on his steering wheel and his neck turned backwards for 12 hours straight for 3 days," but that his pain had pretty much resolved in the past week.  Lochman refilled plaintiff's Celebrex prescription and gave him a prescription for his acid reflux disease.  AR 208.

3.  Consulting physicians

On April 12, 2005, Dr. Eric Carlsen  performed a consultative examination of plaintiff for the state disability agency.  AR 184-85.  Plaintiff reported taking Tylenol Arthritis and Ibuprofen for his neck, shoulder, back and hand pain.  AR 184A.  Carlsen noted that plaintiff was helping his wife with an adult daycare in their home but that he did not do much physical work.  On examination, Carlsen noted that plaintiff had diffuse tenderness in his upper trapezius and lumbar paraspinal muscles.  Plaintiff had limited range of motion in his neck and back with wincing and grimacing on certain movements.  Plaintiff's seated straight leg raising was full but on supine straight leg raising, plaintiff grimaced at about 40 degrees on the right and 50 degrees on the left.  There was diffuse give-way weakness in the upper and lower extremities.  (Carlsen did not explain what he meant by "give-way weakness.")  Carlsen measured plaintiff's grip strength with a Jamar dynamometer, which showed a "non-physiologic curve," indicating either that plaintiff had pain or gave limited effort.  Maximum grip strength was 45 pounds on the right and 30 pounds on the left.

8

Carlsen noted that plaintiff was able to reach overhead, get on and off the examination table and from prone to supine independently and sit through the 15-minute portion of the history without pain behaviors.  AR 185.

Carlsen diagnosed radicular neck pain with history of degenerative disc disease, chronic low back pain and "function overly [sic] which may relate to pain or anxiety." Carlsen concluded that plaintiff would have difficulty doing occupations that required more than "lighter-duty" work and was limited to carrying less with his left upper extremity.  AR 185.  He found no gross deficits in plaintiff's ability to use his arms or ambulate.  Id.

On April 21, 2005, state agency physician Michael J. Baumblatt completed a physical residual functional capacity assessment for plaintiff.  He found that plaintiff could lift 20 pounds occasionally and 10 pounds frequently, stand or walk six hours in an eight-hour work day, sit six hours in an eight-hour work day and occasionally stoop or crouch.  AR 194-201. On September 13, 2005, state agency physician Dar Muceno affirmed this assessment.  AR 194.

C.  Non-Medical Evidence

On September 1, 2005, plaintiff reported on a form submitted in connection with his application that he watched television, walked around the yard, got his mail, did the laundry, washed dishes, fed the dog and shopped for groceries.  AR 111.

9

D. <u>Hearing Testimony</u>

Plaintiff testified at the hearing as follows:

He lived in a farmhouse with his wife, who raised horses.  He received a worker's compensation settlement for his injury in the amount of $30,000.  AR 257-58.

He had not been on a tractor between 1999 and 2007, but that he had been on his lawnmower a couple of times.  AR 261.  Dr. Lochman's August 2006 report stating that he had hurt his neck while driving a tractor was incorrect; he had been merely reminiscing about things he used to be able to do.  AR 260.  During the time period from March 1999 to 2005, he was able to do only some light housework; he could lift very little; and he could not bend.  AR 259.

His condition had gotten worse but from 1999 to 2005 he could prepare supper, sort clothes and vacuum.  AR 261.  He saw friends and went to fast food restaurants with his wife.  He applied for unemployment compensation but was turned down because of his physical condition.  AR 262-63.

Since the summer of 2005, he had suffered from arthritis in his hands, which prevented him from gripping things and for which he took Celebrex.  AR 264.  He could not lift anything heavier than a gallon of milk without pain.  AR 265.  He chose not to have recommended cervical surgery because his father had died from complications after routine back surgery.  AR 266-67.

10

Plaintiff's wife testified as follows:

She had been married to plaintiff for 20 years and she worked as a social worker.  AR 267.  Plaintiff had not done any farm work in the past four or five years.  AR 268.  Before 2005, plaintiff had difficulty bending and stooping but that since then his condition had worsened.  AR 271.  Plaintiff changes his position every 20 minutes and his hand problems had started in 2000.  AR 272, 274.  She had driven plaintiff to Indiana to see relatives for a few days.  AR 276.

The administrative law judge called Dr. Peter M. Ihle, an orthopedic surgeon, to testify as a neutral medical expert.  AR 278.  Ihle stated that although there was a lot of medical evidence regarding plaintiff's neck, there was little medical evidence to support plaintiff's allegations of hip, back and hand pain.  AR 280.  Ihle found that plaintiff's degenerative disc disease did not meet or equal a listed impairment and he concluded that plaintiff retained the residual functional capacity to perform medium work.  AR 282.

Kenneth Ogren testified as a neutral vocational expert.  AR 282.  Ogren had submitted a June 20, 2007 report listing plaintiff's past jobs and their physical demands as listed in the Dictionary of Occupational Titles.  The listed jobs and their corresponding Dictionary titles were as follows:

| | |
|---|---|
| Grove Concrete (welder) | 862.684-014 |
| Heat Treating Plant | 929.687-030 |
| Horn Assembly | 706.684-022 |

11

|              |             |
|--------------|-------------|
| Security     | 376.367-018 |
| Maintenance  | 899.381.019 |
| Highway Maintenance | 899.684-014 |

The administrative law judge asked Ogren whether an individual of plaintiff's age, education and impairments who could perform medium work (lifting 50 pounds occasionally and 25 pounds frequently) could perform plaintiff's past work. Ogren testified that the only one of plaintiff's past jobs that the individual could not perform was the Grove Concrete welder job. AR 285.

### E. The Administrative Law Judge's Decision

In reaching his conclusion that plaintiff was not disabled, the administrative law judge performed a sequential analysis. At step one, he found that plaintiff had not engaged in substantial gainful activity since March 15, 1999, his alleged onset date, through March 31, 2005, his last insured date. AR 17. At step two, he found that a plaintiff had the severe impairment of degenerative disc or joint disease with allegations of neck and back pain. AR 17. At step three, he found that plaintiff did not have an impairment or combination of impairments that met or medically equaled any impairment listed in 20 C.F.R. 404, Subpart P, Appendix 1. AR 18.

The administrative law judge found that plaintiff retained the residual functional capacity to perform medium work involving lifting up to 50 pounds occasionally and up to

12

25 pounds frequently.  He did not believe that plaintiff was incapable of all work activity. AR 18.  Relying on the testimony of the vocational expert, the administrative law judge concluded that plaintiff could perform his past relevant work as a heat treating plant worker, a horn assembler, a security worker, a maintenance worker and a highway maintenance worker.  AR 21.

OPINION

A.  Standard of Review

The standard by which a federal court reviews a final decision by the commissioner is well settled:  the commissioner's findings of fact are "conclusive" so long as they are supported by "substantial evidence."  42 U.S.C. § 405(g).  Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971).  When reviewing the commissioner's findings under § 405(g), the court cannot reconsider facts, reweigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the administrative law judge.  Clifford v. Apfel, 227 F.3d 863, 869 (7th Cir. 2000).  Thus, where conflicting evidence allows reasonable minds to reach different conclusions about a claimant's disability, the responsibility for the decision falls on the commissioner.  Edwards v. Sullivan, 985 F.2d 334, 336 (7th Cir. 1993).  Nevertheless, the court must conduct a

13

"critical review of the evidence" before affirming the commissioner's decision, id., and the decision cannot stand if it lacks evidentiary support or "is so poorly articulated as to prevent meaningful review." Steele v. Barnhart, 290 F.3d 936, 940 (7th Cir. 2002). When the administrative law judge denies benefits, he must build a logical and accurate bridge from the evidence to his conclusion. Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001).

## B. Medical Opinions

Plaintiff contends that the administrative law judge erred by relying on the opinion of Ihle, the orthopedic surgeon who testified as a medical expert at the hearing, that plaintiff could perform medium work, instead of crediting the opinions of his examining and treating physicians. Specifically, he contends that the administrative law judge did not give the proper weight to the opinions of Shapiro and Carlsen, who found plaintiff to have more significant limitations. Plaintiff asserts correctly that a contradictory opinion of a non-examining physician is not sufficient by itself to provide the evidence necessary to reject an examining physician's opinion. Gudgel v. Barnhart, 345 F.3d 467, 470 (7th Cir. 2003). However, the administrative law judge did not simply adopt Ihle's opinion over that of Shapiro and Carlsen. Instead, he explained that he was giving more weight to Ihle's opinion because it was more consistent with the evidence in the record, including the clinical findings.

14

With respect to Shapiro's opinion that plaintiff was limited to light or sedentary work not requiring repetitive use of the upper extremities or overhead work, the administrative law judge found that the opinion was based only on his current examination and that the opinion was not supported by clinical findings or evidence of record.  AR 21.  Plaintiff argues that this finding was erroneous, pointing out that during his third examination, Shapiro noted that plaintiff had an atrophic-appearing left shoulder, diminished left bicipital reflex and left shoulder abduction strength, pain with range of motion in his neck and some tingling to light touch sensation testing along the shoulder.  AR 134.  However, it is plain that the "clinical findings" to which the administrative law judge was referring as contradictory to Shapiro's opinion were not those made by Shapiro during the February 19, 2000 examination, but rather the findings made by other examining physicians.  For example, as the administrative law judge noted, when Carlsen examined plaintiff five years later, in April 2005, he found only some give-way weakness in the upper arms but nothing that would pose any limitations on plaintiff's ability to use his arms. The administrative law judge also noted that Rieser did not find any neurological, sensory or motor loss.  Faced with this conflicting evidence, it was not unreasonable for the administrative law judge to question the reliability of Shapiro's opinion.

Further, the administrative law judge did not choose Ihle's opinion merely because he found it to be most consistent with the medical evidence.  He also found that it was most

15

consistent with the record as a whole.  In this regard, the administrative law judge observed that in spite of Shapiro's having detected some upper extremity weakness at his last examination of plaintiff, plaintiff did not seek or require any treatment for it.  In fact, plaintiff did not report neck or arm problems to any doctor until June 2006, when he told Lochman that he was sore from riding on a tractor for 12 hours, three days in a row. Plaintiff's failure to seek any medical care for this length of time, not to mention his admitted activity level in the interim, provides further support for the administrative law judge's conclusion that Shapiro's opinion deserved little weight.  In addition, the administrative law judge noted that at one point, Rieser had indicated that plaintiff would be able to lift up to 75 pounds.  Overall, the evidence in the record provides adequate support for the administrative law judge's decision to adopt Ihle's opinion over Shapiro's, perfunctory though it was.

Plaintiff also argues that the administrative law judge erred in not adopting Carlsen's opinion.  Plaintiff points to three statements by Carlsen that he believes support greater restrictions on his ability to work.  First, he argues that Carlsen found plaintiff could sit for only fifteen minutes at a time.  However, this is not what Carlsen said.  Rather, Carlsen noted that plaintiff was able to sit through the 15-minute portion of the history without pain behaviors.  This statement alone does not support a conclusion that plaintiff could sit for *only* fifteen minutes at a time or needed a sit-or-stand option, as plaintiff suggests.

16

Second, Carlsen's report does not support a conclusion that plaintiff was restricted to sedentary work, as plaintiff argues.  Carlsen said that plaintiff was restricted to "lighter duty" work, but he did not provide any lifting limitations or other information to support plaintiff's argument that by "lighter duty," Carlsen meant "sedentary."  In any case, the administrative law judge explained that he was giving little weight to Carlsen's opinion because it was not well-supported by clinical findings or the other evidence of record, and because it was founded largely on plaintiff's subjective allegations of pain, which the administrative law judge determined were not fully credible.  Plaintiff points out that Carlsen noted diffuse tenderness in plaintiff's back and shoulder, some limitations in his neck range of motion and wincing and grimacing with lumbar range of motion and supine straight leg raising.  As the administrative law judge noted, however, straight leg raising was full when plaintiff was seated, plaintiff's scores on the grip strength test suggested that plaintiff might have given limited effort, plaintiff was able to get on and off the examination table and from prone to supine independently and had no deficits in ambulation.  In light of these minimal clinical findings, the administrative law judge could reasonably reject Carlsen's opinion that plaintiff was limited to "lighter duty" work, particularly where Carlsen appears to have taken plaintiff's subjective complaints into account in forming his opinion.  Diaz v. Chater, 55 F.3d 300, 307 (7th Cir. 1995) (administrative law judge could reject portion of physician's report

based upon plaintiff's own statements of functional restrictions where administrative law judge found plaintiff's subjective statements not credible).

Finally, plaintiff argues that because Carlsen stated that plaintiff had a "functional overlay" likely related to pain or anxiety, the administrative law should have considered plaintiff's anxiety in determining his residual functional capacity. Plaintiff makes the conclusory statement that this anxiety likely aggravated his tolerance to pain, headaches, hand numbness and tingling. However, there is no evidence in the record that plaintiff was ever diagnosed with anxiety or that it aggravated his other conditions. He did not testify that he had anxiety or seek treatment for it from any doctor. It was not improper for the administrative law judge to disregard any evidence concerning anxiety.

Plaintiff's argument boils down to a disagreement about the manner in which the administrative law judge weighed the competing medical opinions. However, in a case such as this, in which the record supports more than one reasonable conclusion, this court must defer to the administrative law judge's reasoned consideration of the evidence. Hofslien v. Barnhart, 439 F. 3d 375, 377 (7th Cir. 2006) (administrative law judge determines how much weight to give various medical opinions and court will uphold that decision as long as it is supported by substantial evidence); White v. Apfel, 167 F.3d 369, 375 (7th Cir. 1999) (court may not disturb administrative law judge's weighing of medical opinions if record supports it); 20 C.F.R. § 404.1527(d)(2) (describing factors administrative law judge must

18

consider in weighing medical opinions).  Because the administrative law judge gave good reasons for not giving significant weight to Carlsen's opinion that plaintiff could perform only light work and Shapiro's opinion that plaintiff was limited to sedentary work, this court has no reason to overturn that determination.

Finally, even assuming for the sake of argument that the administrative law judge erred in adopting Ihle's opinion that plaintiff can perform medium work, his conclusion that plaintiff is not disabled is still supported by substantial evidence.  Notably, the opinions of Carlsen and the state agency physicians, along with plaintiff's daily activities and his lack of treatment, support the conclusion that plaintiff was capable of performing light work (lifting 20 pounds occasionally and 10 pounds frequently) during the relevant time period.  The vocational expert testified that plaintiff's past work as a horn assembler is a job performed at the light exertional level, and the administrative law judge found horn assembler as one of the jobs to which plaintiff was capable of returning.  Accordingly, substantial evidence supports the conclusion that plaintiff is not disabled at step four of the sequential evaluation, even if one questions the weight the administrative law judge gave to Ihle's opinion regarding plaintiff's residual functional capacity.

## C.  Credibility

Plaintiff challenges the administrative law judge's determination that his statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely credible.  Under Social Security Ruling 96-7p, an administrative law judge must follow a two-step process in evaluating an individual's own description of his or her impairments:  1) determine whether an "underlying medically determinable physical or mental impairment" could reasonably be expected to produce the individual's pain or other symptoms; and 2) if such a determination is made, evaluate the "intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities."  Soc. Sec. Ruling 96-7p, 1996 WL 374186, *1 (1996); see also Scheck v. Barnhart, 357 F.3d 697, 702 (7th Cir. 2004).  When conducting this evaluation, the administrative law judge may not reject the claimant's statements regarding her symptoms on the sole ground that the statements are not substantiated by objective medical evidence.  Instead, the administrative law judge must consider the entire case record to determine whether the individual's statements are credible.  Relevant factors the administrative law judge must evaluate are the individual's daily activities; the location, duration, frequency and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; other

20

treatment or measures taken for relief of pain; the individual's prior work record and efforts to work; and any other factors concerning the individual's functional limitations and restrictions.  SSR 96-7p; 20 C.F.R. § 404.1529(c).  See also Scheck, 357 F.3d at 703; Zurawski, 245 F.3d at 887.

An administrative law judge's credibility determination is given special deference because the administrative law judge is in the best position to see and hear the witness and to determine credibility.  Shramek v. Apfel, 226 F.3d 809, 812 (7th Cir. 2000).  In general, an administrative law judge's credibility determination will be upheld unless it is "patently wrong."  Prochaska v. Barnhart, 454 F.3d 731, 738 (7th Cir. 2006); Sims v. Barnhart, 442 F.3d 536, 538 (7th Cir. 2006) ("Credibility determinations can rarely be disturbed by a reviewing court, lacking as it does the opportunity to observe the claimant testifying.").  However, the administrative law judge still must build an accurate and logical bridge between the evidence and the result.  Shramek, 226 F.3d at 811.  The court will affirm a credibility determination as long as the administrative law judge gives specific reasons that are supported by the record.  Skarbeck v. Barnhart, 390 F. 3d 500, 505 (7th Cir. 2004).

In determining the credibility of plaintiff's statements that he was incapable of all work activity, the administrative law judge considered the following (AR 18-20):

- Plaintiff's failure to seek treatment for swelling of his fingers from June 9, 2005 until April 24, 2006, when he was doing well with the Celebrex;

21

- The lack of objective findings to support plaintiff's allegations of back pain;

- The significant improvement of the hip pain that plaintiff reported in June 2005 with medication and a short course of physical therapy;

- The conservative treatment of plaintiff's symptoms with anti-inflammatory medications with no reported adverse side effects, a short course of physical therapy and chiropractic treatments with reported improvement;

- Plaintiff's failure to seek treatment from February 2000 through April 2005 despite his allegations of disabling levels of pain;

- Plaintiff's ability to perform a "wide range of activities" on a sustained routine basis;

- Plaintiff's statement to a physical therapist in July 1999 that he had aggravated his thoracic spine while trying to lift a bale of hay;

- Plaintiff's statements to health care providers after his last insured date that he was helping his wife with an adult day care, driving a tractor and hoping to take an examination to drive a school bus; and

- Plaintiff's receipt of a worker's compensation settlement and failure to seek vocational or rehabilitation training or attempt to work after his treating physician said he could return to work.

Plaintiff cannot show that the credibility determination was patently wrong. He argues that the administrative law judge substituted his lay opinion for those of the examining physicians in finding that plaintiff's subjective statements were not supported by objective medical evidence, but his argument is unfounded. The administrative law judge's decision reflects his reasoned consideration of the various pieces of objective medical evidence in the record and shows that he did not "play doctor" by substituting his opinions

22

for those of the medical sources.  Further, he did not dismiss plaintiff's statements solely because of the lack of objective medical evidence.  To the contrary, he explicitly considered the other factors in SSR 96-7, including plaintiff's course of treatment, his medications and their side effects, his daily activities, his prior statements and his work history.

In challenging the administrative law judge's credibility finding, plaintiff argues that he should not be faulted for sporadic, conservative treatment and lack of narcotic pain medications.  He seems to be arguing that the administrative law judge should have considered his inability to pay for such treatment under Social Security Ruling 96-7p (administrative law judge may not reject claimant's subjective complaints for failure to obtain treatment without considering claimant's explanation for that failure), but nothing in the record suggests that plaintiff was unable to pay for treatment.  Further, plaintiff argues that the administrative law judge should have considered that plaintiff was living with his symptoms and seeing a medical source only for periodic evaluations and medication refills.  However, there is no evidence in the record that plaintiff saw a medical source for any reason from February 2000 through April 2005.  The administrative law judge could reasonably conclude that if claimant was in so much pain that he could barely do household activities, as he testified at the hearing, then he would have sought medical care.  In fact, it appears that plaintiff did not take any medication apart from over-the-counter pain relievers until he was prescribed Celebrex in the summer of 2006.

23

Also, plaintiff argues that the administrative law judge erred in determining that his daily activities were consistent with medium work.  Although I agree with plaintiff that his activities do not seem to be consistent with medium work, at least on a daily basis, I cannot say the administrative law judge erred in concluding that plaintiff's activities suggested a greater level of activity than plaintiff alleged.  As the administrative law judge noted, plaintiff reported walking around the yard, getting the mail, doing laundry, washing dishes, feeding the dog, shopping for groceries, helping his wife with adult day care, driving, going out to eat and taking a trip out of town.  Taken together, these activities undermine plaintiff's claim that he is totally disabled.

Further, it was appropriate for the administrative law judge to consider activities that plaintiff reported to his health care providers in assessing plaintiff's credibility.  Schmidt v. Barnhart, 395 F.3d 737, 746-47 (7th Cir. 2005).  Contrary to plaintiff's suggestion, it was not improper for the administrative law judge to consider these activities, even if some of them were performed after plaintiff's last insured date or only sporadically.  No matter when or how often plaintiff rode a tractor, helped his wife with day care or drove, the salient point was that plaintiff's statements to his health care providers suggested a greater level of activity than plaintiff admitted at the hearing, which in turn diminished his overall credibility.

In sum, the administrative law judge considered all of the evidence of record and gave specific reasons for his determination that are supported by the record.  He built an accurate

24

and logical bridge from the evidence to his conclusion that plaintiff's testimony concerning his symptoms was not entirely credible.  Plaintiff has not demonstrated that this is one of those rare occasions on which the court should disturb the administrative law judge's credibility finding.

### D.  Step Four

Plaintiff argues that the administrative law judge erred at step four because he did not provide an accurate hypothetical to the vocational expert that included all of plaintiff's symptoms and impairments.  It was not necessary, as plaintiff contends, to include in the hypothetical his need for a sit-or-stand option or limitations in using his arms or hands because the administrative law judge reasonably found that the record did not support these alleged limitations.  Only those limitations supported by medical evidence in the record need be incorporated into the residual functional capacity finding and the hypothetical posed to the vocational expert.  Young v. Barnhart, 362 F.3d 995, 1001-02 (7th Cir. 2004); Steele, 290 F.3d at 942.  Further, nothing in the record suggests that plaintiff's alleged pain or anxiety limited his ability to perform medium work.

Next, plaintiff contends that the administrative law judge failed to perform a proper analysis of plaintiff's past work before finding him capable of performing it.  "To determine whether a claimant can perform his past relevant work, an administrative law judge must

25

compare the demands of the claimant's past occupation with his or her present capacity."
Steward v. Bowen, 858 F.2d 1295, 1299-1300 (7th Cir. 1988).  In making this comparison,
the adjudicator may rely on the functional demands and duties of the job as the claimant
actually performed it or as generally required by employers in the national economy.  Social
Security Ruling 82-61; Smith v. Barnhart, 388 F.3d 251, 253 (7th Cir. 2004); Steward, 858
F.2d at 1301.  The commissioner relies primarily on the Dictionary of Occupational Titles
for information about the requirements of work in the national economy but may call upon
a vocational expert in complex cases.  Social Security Ruling 00-4p; see also SSR 82-61 (jobs
listed in the Dictionary are defined as they usually are performed in national economy);
Brewer v. Chater, 103 F.3d 1384, 1393 (7th Cir. 1997) ("The DOT is a recognized source
of vocational evidence of which an ALJ may take notice when deciding what a typical job
description is in the national economy.").  The administrative law judge did not err when he
did not specifically consider how plaintiff actually performed his past work because he
considered the requirements of the job as generally required by employers in the national
economy.  Further, although plaintiff argues that the administrative law judge should have
considered whether plaintiff performed each job long enough to have acquired skills from
that work, see 20 C.F.R. § 404.1565 (to be relevant, past work must have lasted long enough
for claimant to have learned to do it), he does not point to any evidence that any of his past
jobs were of short duration or otherwise did not meet the requirements of past relevant work.

26

Finally, plaintiff asserts that the administrative law judge failed to follow Social Security Ruling 00-4p.  When, as in this case, an administrative law judge takes testimony from a vocational expert about the requirements of a particular job, SSR 00-4p requires him to ask whether that testimony conflicts with the <u>Dictionary</u>.  If there is an *apparent* unresolved conflict, the administrative law judge must obtain a reasonable explanation from the expert for the conflict.  20 C.F.R. §§ 404.1366(e) and 416.966(e); SSR 00-4p; <u>Overman v. Astrue</u>, 546 F. 3d 456, 463 (7th Cir. 2008); <u>Prochaska</u>, 454 F.3d at 735.

In this case the administrative law judge failed to conduct the necessary inquiry and did not ask the expert whether his testimony was consistent with the <u>Dictionary of Occupational Titles</u>.  Plaintiff argues that, had the administrative law judge conducted this inquiry, he would have discovered that the expert's testimony was inconsistent with the <u>Dictionary</u> with respect to the jobs of material handler, maintenance worker and security guard.  Plt.'s Mem. in Supp. of Summ. Jmt.,  dkt. #10, at 23-24 (listing jobs by <u>Dictionary</u> description).  However, even if plaintiff is correct and the administrative law judge erred in relying on the vocational expert's conflicting testimony concerning the maintenance worker, the heat treating plant job and the security officer job, this error was harmless because the administrative law judge also found that plaintiff could perform his past jobs as a horn assembler and highway maintenance worker.  <u>Prochaska</u>, 454 F.3d. At 735-36 (applying harmless error analysis to SSR 00-4p violation).  Plaintiff concedes that the vocational

27

expert's testimony concerning these two jobs was not in conflict with the <u>Dictionary</u>.  This is sufficient to allow this court to find that the administrative law judge properly found at step four that plaintiff could perform his past work.


ORDER

IT IS ORDERED that the decision of defendant Michael J. Astrue, Commissioner of Social Security, is AFFIRMED and plaintiff Ramsey G. Anderson's appeal is DISMISSED. The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered 7th of July, 2009.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge

28